## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK W. DOBRONSKI,

        Plaintiff,

v.

COMMITTEE FOR POLICE
OFFICERS DEFENSE, INC., d/b/a
POLICE OFFICERS' COMMITTEE,

        Defendant.

Case: 4:26−cv−10220
Assigned To : Behm, F. Kay
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 1/20/2026
Description: CMP− DOBRONSKI V.
COMMITTEE FOR POLICE
OFFICERS DEFENSE, INC. (CS)

---

## COMPLAINT

Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, for his complaint against Defendant COMMITTEE FOR POLICE OFFICERS DEFENSE, INC., d/b/A POLICE OFFICERS' COMMITTEE ("CPOD"), alleges as follows:

### NATURE OF ACTION

1. This is an individual civil action arising from Defendant's systematic practice of placing unsolicited, automated fundraising telephone calls to Michigan consumers using prerecorded voice technology and automated payment-collection systems.

2. Defendant placed calls to Plaintiff's residential telephone numbers using a prerecorded and artificial voice, followed by an automated interactive voice response ("IVR") system designed to solicit and collect credit card or other payment

information.

3.      The calls receiving by Plaintiff displayed telephone number bearing Florida area codes and were originated from Florida, and were received by Plaintiff in Michigan, thus subjecting Defendant's conduct  to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, *et seq.*; the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*; and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

4.      At no time did Defendant obtain Plaintiff's prior express written consent to place automated or prerecorded fundraising calls, nor did Defendant provide a lawful automated opt-out mechanism or a functional method to request placement on a do-not-call list.

5.      Defendant's conduct constitutes unlawful telemarketing and improper use of telephone facilities in violation of federal and state laws.

**PARTIES**

6.      Plaintiff MARK W. DOBRONSKI is a natural person, a citizen of the United States, domiciled in Orange County, Florida, and maintaining a residence in Washtenaw County, Michigan.

7.      Defendant COMMITTEE FOR POLICE OFFICERS DEFENSE, INC. is a nonstock corporation organized and existing under the laws of the State of Virginia that transacts business nationwide under the fictitious name Police Officers'

Committee, with its principal place of business at 10521 Judicial Drive, Suite 200, Fairfax, Virginia 22030-5160.

8. Defendant controlled, directed, or knowingly caused the initiation of the calls at issue, including the prerecorded content, automated dialing, and IVR technology, and the financial benefit derived from the calls.

9. Defendant initiated the calls directly and/or through third-party vendors acting as its agents and ratified the calls by knowingly accepting and retaining funds generated through the unlawful calling campaign.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11. This Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendant because Defendant purposefully directed unlawful telemarketing calls into Michigan, causing tortious injury within this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful calls were received by Plaintiff at his residence in Washtenaw County, Michigan.

## CHOICE OF LAW

14. Defendant's unlawful conduct originated from Florida and was

purposefully directed at Plaintiff in Michigan, rendering the application of Florida and Michigan consumer-protection statutes foreseeable, reasonable, and consistent with due process.

15.    Florida law applies to Plaintiff's claims under the FTSA because Defendant initiated, scripted, controlled, and financially benefitted from the automated fundraising calls from Florida, using Florida-based telephone numbers, infrastructure, and payment-processing arrangements.

16.    Application of Florida law does not constitute impermissible extraterritorial regulation because the deceptive and unlawful conduct emanated from Florida and was merely received by Plaintiff in Michigan.

17.    Michigan law applies to Plaintiff's Michigan statutory claims because Plaintiff received the calls in Michigan, suffered injury in Michigan, and Defendant purposefully availed itself of the Michigan market by directing automated fundraising calls to Michigan residents.

18.    There is no true conflict of law, as the TCPA, FTSA, MHSSA, and MTCCCA share the common purpose of prohibiting deceptive and unlawful telephone solicitation practices.

19.    Both Florida and Michigan have a substantial interest in regulating conduct that originates within their borders or causes injury to their residents, and application of their respective statutes is constitutionally permissible.

### FACTUAL ALLEGATIONS

4

**Plaintiff's Numbers**

20.     Plaintiff maintains a residential telephone number ending in *858 (the "*858 Number"), which he uses primarily for personal, family, and household purposes.

21.     Plaintiff's *858 Number is assigned to a service for which Plaintiff is charged on a per-call and per-minute basis and is therefore protected under the TCPA.

22.     Plaintiff's *858 Number has been continuously listed on the National Do Not Call Registry since at least October 2, 2025.

23.     Prior to May 7, 2025, Plaintiff maintained a residential telephone number ending in *911 (the "*911 Number"), which he used primarily for personal, family, and household purposes.

24.     On or about May 7, 2025, Plaintiff terminated the use of the *911 Number due to the number of annoyance calls being received.

25.     Plaintiff's *911 Number was assigned to a service for which Plaintiff is charged on a per-call and per-minute basis and is therefore protected under the TCPA.

26.     Plaintiff's *911 Number was continuously listed on the National Do Not Call Registry since at least June 27, 2024 and until the number was terminated on or about May 7, 2025.

27.     By listing his *858 Number and *911 Number (collectively "Plaintiff's Numbers") on the National Do Not Call Registry, Plaintiff has given notice to the world, including Defendant, that he does not wish to receive telephone solicitations

5

at his telephone numbers.

28.     Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions.  *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3rd Cir., 2015).

## Call 1

29.     On January 16, 2025, at 11:38 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's *911 Number.

30.     The caller identification number displayed was 689-999-7624, and the caller identification name displayed was OVIEDO FL.

31.     Upon Plaintiff answering the incoming telephone call by saying "hello," Plaintiff noticed a delay of approximately 5 seconds before a recorded voice message began playing by stating "Hi, this is Charles calling for the Police Officers Committee."  The message continued discussing "our police officers on the streets" and suddenly disconnected.

32.     Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (689-999-7624) to make a do-not-call request, but received a recorded message stating "The number you have dialed is not in service. Please check the number and call again. Goodbye."

## Call 2

33.     On January 13, 2026, at 1:30 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's *858 Number.

34.     The caller identification number displayed was 689-999-9980, with no caller identification name information.

35.     Upon Plaintiff answering the incoming telephone call by saying "hello," Plaintiff noticed a delay of approximately 8 seconds before a recorded voice message began playing stating "Hi, this is Charles calling for the Police Officers Committee." The recorded voice sought a donation of at least $35, and then transferred Plaintiff to an IVR system which identified as "Natalie" and sought Plaintiff's credit card information.

36.     At no time during the call was the telephone number of the calling entity stated.

37.     At no time during the call was there provided an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request.

38.     Plaintiff expressly made a request to the IVR system for the called party's telephone number, the IVR system responded "No problem, we will provide you with a contribution return envelope."

39.     Immediately after the termination of the call, Plaintiff utilized another telephone line (not the *858 Number) to dial the caller identification number displayed (689-999-9980); Plaintiff received a recorded message stating "Please call

back from the number we've called you. We do not recognize your number."

40.     Plaintiff then dialed the caller identification number displayed (689-999-9980) from his *858 Number; Plaintiff received a recorded message stating "The number you have dialed is not in service. Please check the number and call again. Goodbye."

## Additional Calls

41.     Defendant placed additional substantially similar automated calls to Plaintiff using prerecorded voice messages and automated payment-collection systems on other dates and times to be established through discovery.

## Telemarketing and Fundraising Purpose

42.     The primary purpose of Defendant's calls were to induce the transmission of money.

43.     Defendant framed the solicitation as funding political advocacy and related messaging services.

44.     Critics argue that Defendant is a sham organization that preys upon consumers claiming to be a charity helping police officers when, in reality, CPOD is not a 501(c)(3) charitable organization, and the vast majority of donations received are spent on fundraising, salaries and other expenses.

45.     Soliciting payment through prerecorded voice messages and automated systems constitutes telemarketing and telephone solicitation under the TCPA, FTSA, MHSSA, and MTCCCA.

## Sophistication, Knowledge, and Willfulness

46.     Defendant is a sophisticated fundraising organization that conducts large-scale telephone solicitation campaigns using professional vendors, automated calling platforms, and payment-collection infrastructure.

47.     Defendant knew, or recklessly disregarded, that prerecorded voice messages and automated IVR systems constitute regulated calling technology requiring prior express written consent, accurate caller identification, and lawful opt-out mechanisms.

48.     Despite this knowledge, Defendant initiated and caused the initiation of calls to Plaintiff without consent and without providing lawful opt-out mechanisms.

49.     Defendant's violations were knowing, willful, and intentional, entitling Plaintiff to enhanced damages where authorized by law.

## Lack of Consent and Do-Not-Call Status

50.     Plaintiff never provided prior express written consent or prior express consent to receive automated or prerecorded calls from Defendant.

51.     Plaintiff had no established business or transactional relationship with Defendant.

52.     Plaintiff's Numbers were registered on the National Do-Not-Call Registry at all relevant times.

53.     The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone

number at which they are authorizing telemarketing calls to be received at.  For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (1992).

54.     The FCC has further declared that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, if the caller is making calls within the scope of the consent given, and absent instructions to the contrary.  *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8028, 2015 WL 4387780, at *47, ¶ 141 (2015).

55.     The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In the Matter Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (2003).

56.     At no time has Plaintiff released any of his phone numbers to Defendant in order to have given invitation or permission to be called at that number.

57.     Consent cannot be "presumed."  The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL

4387780, at *20, ¶ 52 (2015).

58.     The FCC places the burden on the caller to prove that they have the necessary consent that satisfies federal laws and regulations. They may not, for example, rely on comparison websites or other types of lead generators to retain proof of consent for calls the seller makes. In all cases, the consent must be from the consumer. "Fake leads" that fabricate consumer consent do not satisfy the TCPA or the TCPA implementing regulations. A consumer's consent is not transferrable or subject to sale to another caller because it must be given by the consumer to the seller. *In the Matter of Rules and Regulations Implementing the TCPA*, 38 F.C.C. Rcd. 12247, 12267, 2023 WL 8826682, *13, ¶ 49 (2023).

59.     The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made. *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 81 (2015).

**Vicarious Liability**

60.     The FCC has clarified that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of [the TCPA] rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564,

at *3, ¶ 7 (2005).

61.     A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, at *9, ¶ 28 (2013).

62.     Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts.  In either case, the defendant's embrace of the actor's purpose or designed – whether by agreement or by action – renders the defendant liable for the underlying tort.

63.     The liability of coconspirators is joint and several.  All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

### Injuries

64.     For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the invasion of privacy and intrusion on Plaintiff's right of seclusion.

65.     For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff.  For the calls that were answered, Plaintiff had to go to the unnecessary

trouble of answering them.  Even for the unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to information the user of important missed communications.

66.    Each and every call alleged herein initiated by Defendant to Plaintiff's telephone lines without Plaintiff's consent resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its services.

### COUNT I
### TCPA - 47 C.F.R.  § 64.1200(a)(1)(iii)

67.    Plaintiff incorporates paragraphs 1 through 63.

68.    Defendant  placed non-emergency calls to Plaintiff's Numbers, which are telephone numbers for which the called party is charged for the call, using an ATDS without Plaintiff's prior express consent.

69.    Each of Calls 1 and 2 call violated 47 C.F.R. § 64.1200(a)(1)(iii).

70.    The aforesaid violations were willful or knowing.

### COUNT II
### TCPA - 47 C.F.R. § 64.1200(a)(2)

71.    Plaintiff incorporates paragraphs 1 through 63.

72.    Defendant initiated telemarketing calls using an ATDS to Plaintiff's Numbers, which are residential telephone numbers, without prior express written consent.

73.    Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(2).

74.     The aforesaid violations were willful or knowing.

## COUNT III
### TCPA - 47 C.F.R. § 64.1200(a)(3)

75.     Plaintiff incorporates paragraphs 1 through 63.

76.     Defendant initiated telephone calls to Plaintiff's Numbers, which are residential lines, using an artificial or prerecorded voice to deliver a message that includes or introduced an advertisement or constitutes telemarketing without the prior express written consent of the called party.

77.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(3).

78.     The aforesaid violations were willful or knowing.

## COUNT IV
### TCPA - 47 C.F.R. § 64.1200(a)(7)

79.     Plaintiff incorporates paragraphs 1 through 63.

80.     Defendant abandoned calls by failing to connect Plaintiff to a live sales representative within two seconds of Plaintiff's completed greeting.

81.     The fact that all of the calls received by MOHENA were abandoned infers that Defendant abandoned more than three percent of all answered telemarketing calls during the relevant calling campaign.

82.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(7).

83.     The aforesaid violations were willful or knowing.

## COUNT V
### TCPA - 47 C.F.R. § 64.1200(a)(7)(i)(A)

84.     Plaintiff incorporates paragraphs 1 through 63.

85.     Defendant failed to provide a required prerecorded identification and opt-out message when no live agent was available.

86.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(7)(i)(A).

87.     The aforesaid violations were willful or knowing.

## COUNT VI
### TCPA - 47 C.F.R. § 64.1200(a)(7)(i)(B)

88.     Plaintiff incorporates paragraphs 1 through 63.

89.     Defendant failed to provide an automated, interactive opt-out mechanism during abandoned calls.

90.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(7)(i)(B).

91.     The aforesaid violations were willful or knowing.

## COUNT VII
### TCPA - 47 C.F.R. § 64.1200(c)(2)

92.     Plaintiff incorporates paragraphs 1 through 63.

93.     Defendant initated telephone solicitations to Plaintiff despite Plaintiff's Numbers being listed on the National Do Not Call Registry.

94.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(c)(2).

95.     The aforesaid violations were willful or knowing.

## COUNT VIII
### TCPA - 47 C.F.R. § 64.1200(d)(4)

96.     Plaintiff incorporates paragraphs 1 through 63.

97.     Defendant made telephone calls using an artificial or prerecorded-voice or for telemarketing purposes and failed to provide the called party with the telephone number or address at which the person or entity may be contacted.

98.     Each of Calls 1 and 2 violated 47 C.F.R. § 64.1200(d)(4).

99.     The aforesaid violations were willful or knowing.

## COUNT IX
## TCPA - 47 C.F.R. § 64.1601(e)

100.    Plaintiff incorporates paragraphs 1 through 63.

101.    Defendant initiated calls but failed to transmit caller identification information, including the caller's name and a telephone number at which an individual may make a do-not-call request during regular business hours.

102.    Each of Calls 1 and 2 violated 47 C.F.R. § 64.1601(e).

103.    The aforesaid violations were willful or knowing.

## COUNT X
## MHSSA

104.    Plaintiff incorporates paragraphs 1 through 63.

105.    Defendant made telephone solicitations to Plaintiff while Plaintiff's Numbers were listed on the federal do-not-call registry.

106.    Each of Calls 1 and 2 violated M.C.L. § 445.111a(5).

107.    Defendant made telephone solicitations to Plaintiff's Number, but did not provide a telephone number of the organization or other person on request.

16

108.    Each of Calls 1 and 2 violated M.C.L. § 445.111b(1).

**COUNT XI**
**MTCCCA**

109.    Plaintiff incorporates paragraphs 1 through 63.

110.    Defendant used a telephone line to contact a subscriber at the subscriber's residence telephone number to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber where the subscriber did not request or consent to the contact from the caller and the subscriber has not knowingly and voluntarily provided his telephone number to the caller.

111.    Each of Calls 1 and 2 violated M.C.L. § 484.125(2).

**COUNT XII**
**FTSA**

112.    Plaintiff incorporates paragraphs 1 through 63.

113.    Defendant made or caused to be made unsolicited telephonic sales calls Plaintiff's Numbers which numbers appeared the then-current quarterly "no sales solicitations calls" list published by the department.

114.    Each of Calls 1 and 2 violated Fla. Stat. § 501.059(4).

115.    Defendant made telephonic sales calls using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

116.    Each of Calls 1 and 2 violated Fla. Stat. § 501.059(8)(a).

117. Defendant made telephonic sales calls but failed to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call; the telephone number displayed must be capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed.

118. Each of Calls 1 and 2 violated Fla. Stat. § 501.059(8)(b).

119. The aforesaid violations were willful or knowing.

### DAMAGES CALCULATION

For purposes of notice pleading only, and without limitation to damages proven through discovery or at trial, Plaintiff alleges the following minimum statutory damages based solely on the two known calls described in this Complaint:

| Count | Statute/ Regulation | Minimum Violations | Statutory Amount | Minimum Subtotal |
|---|---|---|---|---|
| I | 47 C.F.R. § 64.1200(a)(1)(iii) | 2 | $500 | $ 1,000 |
| II | 47 C.F.R. § 64.1200(a)(2) | 2 | $500 | $ 1,000 |
| III | 47 C.F.R. § 64.1200(a)(3) | 2 | $500 | $ 1,000 |
| IV | 47 C.F.R. § 64.1200(a)(7) | 2 | $500 | $ 1,000 |
| V | 47 C.F.R. | 2 | $500 | $ 1,000 |

§ 64.1200(a)(7)(i)(A)

| | | | | |
|------|-------------------------------|---|-------|---------|
| VI | 47 C.F.R.<br>§ 64.1200(a)(7)(i)(B) | 2 | $500 | $ 1,000 |
| VII | 47 C.F.R.<br>§ 64.1200(c)(2) | 2 | $500 | $ 1,000 |
| VIII | 47 C.F.R.<br>64.1200(d)(4) | 2 | $500 | $ 1,000 |
| IX | 47 C.F.R. §<br>64.1601(e) | 2 | $500 | $ 1,000 |

Minimum TCPA statutory damages (non-trebled):      $18,000

Pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), because Defendant's violations were willful or knowing, Plaintiff seeks treble damages of $1,500 per violation, yielding minimum TCPA damages of $54,000 based on the two known calls alone.

In addition, Plaintiff seeks statutory damages under the MHSSA (Count X) of $250 per call, for a minimum of $500 as to the two known calls.

Plaintiff seeks statutory damages under the MTCCCA (Count XI) of $1,000 per call, for a minimum of $2,000 as to the two known calls.

Plaintiff seeks statutory damages under the FTSA (Count XII) of $500 per call, for a minimum of $1,000 as to the two known calls, which amount shall be trebled because the violations were willful or knowing, for minimum FTSA damages of $3,000 as to the two known calls.

Plaintiff expressly alleges that the foregoing amounts represent minimum damages only, and that additional violations, calls, and damages will be established through discovery and proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award:

A.      Statutory damages under the TCPA, 47 U.S.C. § 227, of not less than $500 per violation, for each violation;

B.      Treble damages under the TCPA pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5) for all violations found to be willful or knowing;

C.      Statutory damages under the MHSSA, M.C.L. § 445.111c(5), of $250 for each violation;

D.      Statutory damages under the MTCCCA, M.C.L. § 484.125(5), of $1,000 for each violation;

E.      Statutory damages under the FTSA, Fla. Stat. § 501.059(10)(a)(2), of $500 for each violation,

F.      Trebled damages under the FTSA pursuant to Fla. Stat. § 501.059(10)(a)(2) for all violations found to be willful or knowing;

G.      Injunctive relief prohibiting Defendant, its agents, servants, employees, vendors, and all persons acting in concert or participation with them from initiating further telephone calls or text messages to Plaintiff in violation of the TCPA or

FTSA;

H.      Costs of suit and taxable disbursements;

I.      Pre- and post-judgment interest as allowed by law; and

J.      Such other and further relief as the Court deems just and proper, including damages for additional violations revealed through discovery.

Plaintiff expressly pleads minimum statutory damages only, with total damages to be determined  based on the number of violations established through discovery and evidence.

Respectfully submitted,

Dated: January 20, 2026

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

21